The United States Court of Appeals for the Federal Circuit is now open and in session. God Save the United States and this Honorable Court. Good morning again. This is Case 19-1805, Power Analytics Corporation v. Operation Technology, Mr. Wojciech. Thank you, Your Honor, and may it please the Court, I am here on behalf of Power Analytics Corporation. We have appealed to reverse errors by the lower court that are very straightforward but which permeate the entire decision granting the motion to dismiss below. The defendants insisted and the court accepted a very clearly erroneous antitrust standard in assessing the complaint overall. And that result is the court got wrapped up in demanding that we plead factual allegations that are not required in order to assert our antitrust claims. In addition, I will address also that the court engaged in some inappropriate fact-finding and acceptance of adverse inferences that were suggested by the defendants, which are contrary to law and should not occur at the motion to dismiss stage. Let me ask you about a major issue. You're now arguing that the court should have dealt with it as a refusal to deal rather than exclusive dealing. But I looked over your complaint, 85-page complaint, and it was dealing with contracts. I didn't see... I'm not sure. I may have missed it. I'm not sure I saw the words refusal to deal. It seems like an exclusive dealing complaint. You use language such as restraint of trade, anti-competitive, but really related to the agreement. Is that correct? No, Your Honor, not completely. I think if you look at the pleadings, while there were agreements and some of them were at least in some written form, what we're alleging here is that there was an overall conspiracy to restrain trade, part of which was agreements to do certain things and other activities which resulted in the restraint. We specifically declined and said in the complaint, and that's in 1418 paragraph 79 and 1455, 197, that this was not a vertical arrangement, an exclusive dealing arrangement between buyers and sellers. That's not what we alleged here. Was there some attempts at dealing only with certain people? Yes. But that's not an exclusive dealing arrangement under the law. And even if that were the case, even though that were the case, the things that the plaintiff, the defendants, allege we need to prove are not true. Coercion is not required under any of those standards. But more importantly, Your Honor- Mr. Ruriak, I just want a clarification on what you said. What you said is consistent with what I understand from your brief. For example, at reply brief page four, you say the anti-competitive agreements here, because they are not exclusive dealing arrangements, and you actually italicized that portion, do not implicate those presumed pro-competitive benefits. So in your view, this is not, and your complaint has not alleged this case to be an antitrust violation as an exclusive dealing arrangement. Is that correct? That's correct, Your Honor, particularly in the way that is categorized under the law, which is between a vertical arrangement between buyers and sellers. This is a horizontal conspiracy between competitors and those who have control over the market by having a dominant position with purchasers. So to the extent, let me please follow up, to the extent that we understand certain portions of the district court's opinion to be analyzing your claims under an exclusive dealing arrangement exclusively, that isn't relevant to our review, and we need not resolve whether or not the court got the exclusive dealing portion of the opinion correct. Is that right? No, Your Honor, I think it is irrelevant. That's right. And I think that that should be put aside, because in this case, what we've alleged here is a, I'll say a garden variety, if you will, agreement to restrain trade and exclude competitors by other competitors. So it's not vertical, it is not a case, and the court unfortunately got off on the exclusive dealing arrangement. When you say, counsel, when you say unfortunately got off on that topic, isn't that because that's all you argued below until the final hearing? No, Your Honor, it's not. I think the confusion is we've repeatedly told the court in the second and third amendment complaints that this was not a vertical agreement. Use of the word exclusivity happens all the time, because you're excluding people. In this particular case, there are a number of things that happened, and I think that's important to understand that are pled. It's not just, you know, some kind of exclusivity. There was, in fact, refusals to participate or deal with the plaintiff. There was also use of a dominant position in all those cases to impose unreasonable restrictions on customer choice. You can only use your software of mind. Counsel, I don't think you've answered my question. I'm sorry. I understand. Putting aside what the complaint might theoretically support, did you ever argue to the district court before that final hearing that your theory, that your legal theory under the antitrust laws was refusal to deal as opposed to an exclusive dealing arrangement? We argued repeatedly that it was not exclusive dealing, and there were multiple issues here, one of which was refusal to deal, which we put in the complaint. We said that there was refusals to deal. But we didn't care. Where did you argue in your briefs that you were not pursuing an exclusive dealing arrangement and that you were only pursuing a refusal to deal claim? Well, we didn't argue it that way, Your Honor, because we don't need to. What we said, we specifically said, and I say it paragraph, right in the complaint, it's paragraphs 141879 and 1455197, we particularly said, and I can read it to you, that the anticompetitive agreement alleged here is not a vertical agreement with a buyer and seller or a manufacturer and retailer, but instead agreement between two sellers of independent but necessarily interconnected products to foreclose and exclude existing and potential competitors from providing products in the market. That's the one agreement. And we did the same thing in the other. Counsel, the difficult thing for me is that in the hearing on the third amended complaint, after you were given multiple attempts to amend, counsel for your client stood up and said, so this is where, in giving this thought over the past couple of months, these agreements function as refusals to deal. These are refusals to deal. This is the very first time these words, as far as I can tell, were uttered by your party, and opposing counsel said that we've gone through four complaints and three amendments and we've never before heard that this claim is actually a refusal to deal. And then they said, but I want to echo the point, if you're going to be inclined to consider plaintiff's counsel's new refusal to deal argument, which hasn't been briefed, we would ask for additional briefing here because that is new to us. And that was the nature of the hearing. And then in the district court opinion, the district court said and found that you had waived as not raising this issue. And he dismissed without prejudice, which allowed you the opportunity to amend your allegation. Why are you wasting our time with this appeal? Why did you not pursue the district court's express invitation to refile? Your Honor, there's nothing more that we could allege. We had alleged everything. In opposition motion dismissed, if you look at page appendix 19, lines 11 to 21, and appendix 1932 lines 9 through 12 and 22 through 25, which specifically say that they were refusing to deal with us, but that's not the characterization of the entire agreement. It's only a portion of it. And we don't have to put labels as a plaintiff on a motion dismissed and looking at a complaint, you need not put labels on that. We had nothing else that we could really allege in this case. We alleged everything. We alleged all the activities. But counsel, when you say you don't need to put labels on it, you may not need to put labels on it in the complaint itself. But once you start making arguments to the court, the court doesn't have an obligation to look for legal theories. If you recite, if you argue a particular legal theory, and you pursue that throughout all of the briefing, every time you respond to a motion to dismiss, then the court has the right to say, I'm not going to accept a brand new theory at the last minute. Well, Your Honor, I would, I would beg to disagree a little bit. I think that we've tried repeatedly to convince the court that this was not a vertical, vertical, however you label it, it was not a vertical agreement. But the vertical-horizontal doesn't do much for you, because even there are horizontal relationships that could constitute exclusive dealing arrangements. Yes, Your Honor, but only in the vertical arrangements. Only in the vertical arrangements are the things that the court found we lacked. Lacked coercion, lacked some kind of a binding agreement over time. Those are critical only in the case of a vertical arrangement. This was never played vertically. We repeatedly said that. We didn't want to put a label on it, because it is a combination of things. There were multiple things that were done here. The case that I would refer the court to is Columbia Medical versus Kaiser and Loon. It's a basic antitrust case that we pled. And what it says there is when you have an independent competitor in an oligopolistic market like this, few competitors, that limits the power of the dominant firms. If they're excluded, and when such an exclusion is constantly brought about by concerted action, which we had here, no one says there wasn't an agreement, in which a dominant entity is a party, then a reasonable restrained trade is found. And I think that's the basis. Counsel, you're well into your rebuttal time. Why don't we hear from the other side, and we'll give you your five minutes for rebuttal. Thank you, Your Honor. Mr. Stockinger. Thank you, Your Honor. May it please the court. Take a minute and proceed with your argument. Certainly, Your Honor. I will focus then on the one issue that this court has been focused on, which I think is the crux, that this decision can be affirmed on waiver alone. Now, counsel, I think this court is correct as pointing out that power analytics raised this issue for the first time that the oral argument was given an issue, did not take it, and appealed. Having done that, it cannot raise the issue again. That said, Mr. Rujak has said repeatedly that it was the defendants that were insisting on this theory, and has said that the refusal to deal theory is somehow different, and therefore, there are additional, there are allegations and factual allegations that do not need to be alleged that the district court found did need to be alleged. I'd like to draw this court's attention, however, to the reply brief filed by power analytics at page six. There, they argue, on page six and seven repeatedly, but I'll just quote from page six, that the refusal to deal theory, quote, did not alter the theory of recovery one iota, end quote. And this is an argument to try to get- Let me ask you, isn't it true that factual allegations in a complaint could theoretically support two different antitrust theories? Your Honor, that is correct, they theoretically could, but as was pointed out by the court in questioning, the counsel needs to provide those theories to the court, and it did not do so here. Counsel, a real question here is whether the case should have been decided under 12B-6. This is a complicated factual situation, and I see assertions of 76%, 97% market share, which sounds fairly dominant, and so why weren't there questions about the extent to which other options were open? So, Your Honor, if I could point this court to Trinko, the court has made clear that the mere possession of monopoly power is not actionable, so what we need to look for here is an agreement that- Is it not relevant to exclusive dealing? Your Honor, it's relevant, but what the exclusive dealing case law makes clear is that there needs to be some forcing and foreclosure, and that was the point I was trying to make here, that if Power Analytics believes that the exclusive dealing case law and the refusal to deal case law and its theories are the same, then the same elements of requiring coercion or some long-term agreement that is difficult to terminate is necessary here. I will point out that at the opening brief at page 44, Power Analytics seems to take that position by arguing that the court should look at exclusive dealing case law on foreclosure, even when assessing the refusal to deal, and what that case law makes clear is that you need to assess the relative market strength of the parties to see whether there's some forcing here. If you look at ZF Meritor, if you look at Densquai, if you look at 3M, the parties all turn on the sort of foreclosure forcing that is necessary and found in those contracts, and that was pretty well summarized in the Ninth Circuit Aerotech decision. Now, why is that necessary? Because without that type of binding that happens, these look like just contracts that are found in the competitive market. They don't have additional anti-competitive exclusionary effects. And so, if we look here, for example, at the Schneider ETAP agreement, the agreement is simply alleged in paragraph 204 to be one in which, and that's found at volume two, appendix 1546, is alleged to be one in which Schneider is purchasing an ETAP suite of power system software for use within the company's engineering services business. Now, that's a contract that is, as Aerotech decision would say, is a contract simplicitare, which is not illegal. And given that there are no additional allegations of some exclusivity coming out of that contract, there is no binding effect occurring. Counsel, going back to Judge Lurie's point, though, because this was all framed in motions to dismiss, your motion to dismiss was the original place in which you characterized the facts as alleging an exclusive dealing arrangement. Right? Well, Your Honor, there is a long history here. So, if we look back to the original complaint in the First Amendment, to the complaint, there were direct terms that this was a de facto exclusive dealing arrangement alleged, and there is, in fact, a Clayton Act section three claim alleged, which is a specific statute dealing with exclusive dealing arrangements. So, I don't believe that... But the Clayton Act claim was dismissed. It was, but then that theory continued into the first and second complaint, and it persists even now. If we look, for example, at Volume Two, Appendix 1511, Paragraph 95, the ETAB and OSI agreement is alleged to be binding the two parties to anti-competitive exclusivity mechanisms. And then before that, Paragraph 80 describes the agreement as an exclusive arrangement, and if we look at Schneider at Appendix 1545, Paragraph 203, you find the same types of allegations that the agreement is one for sole sourcing and exclusivity. And so, when you read the allegations as a whole, what you see is that the complaint as a whole reads like an exclusive dealing claim. In other words, OSI and Schneider are alleged to have entered into agreements with ETAB to only deal with this. That is different than a concerted refusal to deal, which typically is some agreement in which the parties agree not to deal with something. But that's not what the allegations here say. Specifically, the agreements themselves are to only deal with ETAB, and that puts us under the exclusive dealing case law. Is it correct that the first time it was described as a refusal to deal claim was the final hearing? That is correct, Your Honor. And because we're on the telephone, I had trouble determining which judge said it. I'm sorry, Judge O'Malley. Judge O'Malley. And Judge O'Malley, if you look, I believe you pointed out that if you look at the first time, that this was a new thought that came up in the past couple of months between the briefing and the oral argument. Just to clarify, that was Judge Moore that noted that, not Judge O'Malley. Oh, I'm sorry, Judge. And all of us gals must sound the same. Go ahead. No, no, not at all. I just, I have trouble on the phone. So, just to continue, yeah, I don't know if there's another question, but just to continue on the point of coercion and the relative strength of the parties here, I did want to note that here, the exclusion is, you know, the exclusion, the parties that are said to not be dealing with power analytics are OSI and Schneider. And yet, if we look to the actual allegations, and we remember that Tampa Electric requires some analysis, even under the allegations of the relative financial strength of the parties to determine foreclosure. Here, if you look, for example, at Volume 2, Appendix 1543, Paragraph 197, Schneider is alleged to have a substantial market power in the EMS bundled market. And if you look at OSI, it's alleged to be a critical bridge into the new tick markets, that's at Paragraph 97, Volume 2, Appendix 1511. So here, if we're looking at the financial strength from the allegations themselves, and you look at the lawyer argument here that these two, Schneider and OSI, are gatekeepers into the market, that negates some inference that it is ETAP who is coercing Schneider and OSI to make a decision it wouldn't otherwise make in a competitive environment. And that's really the key in order to show injury to competition. There must be some showing that these decisions by Schneider and OSI to not deal with power analytics are brought about by something anti-competitive and would not otherwise arise in the competitive market. Mr. Ryak mentions vertical arrangements. This doesn't seem to me to be a question of vertical arrangements, whether it's exclusive dealing or refusal to deal, they're horizontal, are they not? Your Honor, I do think these are vertical agreements. Typically, exclusive dealing arises out of vertical agreements in which you have parties at different levels in the economy. So if you look at, for example, business electronic, it makes it clear that restraints imposed by agreements between competitors are denominated as horizontal restraints, those imposed by agreements between firms at different levels of distribution are vertical restraints. So I understand that Mr. Ryak points to certain allegations where they deny that these are vertical agreements, but if you look to the remaining allegations, the factual allegations, it is clear these are vertical agreements. If you look, for example, at paragraph 204, the press release, that specifically says that Schneider is purchasing products from ETAP, that is a vertical arrangement between a buyer and seller. And then if you look at the OSI allegations, paragraphs, for example, 92 and 93, found that volume two, appendix 1510, they are alleging that the exclusivity comes out of license agreements in which OSI as a licensor at one level of the economy is licensing to ETAP technology. So these are clearly as alleged vertical agreements, despite the conclusory allegation in the beginning of each section. Thank you. I haven't heard that the time is up, is it? There's three minutes remaining, Judge Lurie. Yep. Please continue if you wish, Mr. Certainly, Your Honor. I'm not sure I have many more points here. I will note just that I do want to ensure, and I'm sure the court does, I wanted to look at some of the other allegations quickly and just touch on them, that beyond the specific terms, the agreements, if we look at them at there is nothing alleged here of an exclusivity mechanism. And so what I understand Power Analytics to argue is that they are looking at allegations of circumstantial evidence to show the agreement. For example, that contemporaneous with the agreements, OSI and Schneider, and not ended dealings with Power Analytics. I would point out that those allegations are contradicted, that if you look at the actual pleadings at paragraph 195, that Schneider was alleged, affirmatively alleged to have continued to deal with ETAP for three years after the agreement was in place, and if you look at paragraph 100, that paragraph expressly says that OSI was allowing Power Analytics to interconnect with the historian software. So the idea that Schneider and OSI were even not dealing with Power Analytics is negated by the allegations themselves. And beyond that, these allegations of the refusal to deal or the not dealing with Power Analytics under Colgate has long been recognized as part of the competitive environment, and under Twombly and NBC Brantley should not be credited because allegations that are consistent with competition cannot plausibly state a claim. I think with that, if there aren't further questions, I will conclude the argument that waiver has occurred here. There seems to be a little argument that the allegations of coercion or long-term agreements that cannot easily be terminated have not been made here. Those types of allegations, in any case, would be required under either theory. Thank you. Thank you. Yes, I would like that, Your Honor. Thank you. First of all, I think that even if this case were an exclusive dealing arrangement that's vertical, which it is not, and I'll get into that in a minute, coercion is not required. And the court made an error in adopting, and you heard Mr. Stockinger argue repeatedly, coercion is required. It is not, even under an exclusive dealing arrangement. 90% of antitrust agreements are between willing parties. In this case, it's willing parties. If that were the case, that coercion is required, then you could never have an antitrust conspiracy to exclude competition where two willing parties agree. And Schneider, one of the defendants here, admitted in his briefing, and that's at the 17, 23, and 24, that coercion is not required, even in exclusive dealing arrangement to state a claim. It can be evidence of it, but it's not required. And I think that's the case. Even if we did look at this, which we should not, as an exclusive dealing arrangement, the key element that they hang their hat on, that the court relied upon, this coercion does not exist. It is not a requirement in the pleading. Because here, it was between willing parties wanting to exclude ETAP from the market. Secondly, the fact that there were at times purchases of product between the two parties, and they wanted to make it a vertical arrangement, that's not what the agreement was. The agreement was to exclude a competitor, which is ETAP. And it had multiple ways to do that. One was no longer participating with them in any commercial way. You could say that's refusal of view. You could say it's exclusivity. Whatever you want to say, but it's refusing to participate. They also restricted the customer base. Because in each case, OSI and Schneider were critical bridges. The way you got to the customer's list through them. And if you could not do that. Mr. Vuriak, what paragraphs of your third amended complaint would you refer me to as the clearest places where you believe the district court should have construed this complaint as a refusal to deal complaint? Well, again, Your Honor, I think that refusal to deal is only one element, but there are specific, there are very specific paragraphs, I'll try to pull them up for you here. I apologize. I think I've lost those. There are specific paragraphs in each where they said that there was a refusal on the part of OSI to do that. I apologize. We're trying to find these now. I should have had them at my elbow here. I think that if you look at, okay, if you look at Appendix 1420, Paragraph 85, 1431 to 1334, 120 to 132. Okay. I'm on Paragraph 85. This is the one, just to make sure we're both looking at the same document, ETAP learned of the press release and immediately recognized Power Analytics posed a competitive threat. That one? Yes. And how is that? You have to take them. I think I'm taking them in the course, Your Honor, through this. It's a number of pleadings. It starts out with the fact that they acknowledged the fact that there was exclusive arrangement. That they would not permit other competitors to participate. So all of these paragraphs that I was giving you are portions of it. We don't have a written agreement here that, as the court said below, you wouldn't put in writing that you're doing something illegal. No, but I guess what I'm still stuck on is trying to understand how it is the court should have construed your complaint as alleging the cause of action related to refusal to deal under the Sherman Act. And so what I'm looking for from you are the paragraph, because, I mean, your first amended complaint made it, or your first complaint made it incredibly clear that this was an exclusive dealing cause of action, you said so explicitly. And there's no doubt that things have changed and morphed through the process, but I'm trying to wrap my hands around your argument that the district court erred in not appreciating that the claim had morphed into clearly a refusal to deal claim, and that the district court was in error in continuing to analyze and think about it under the rubric of exclusive dealing. So I'm trying to find where in your complaint is something that should have keyed the district court into the fact that you had changed paths. Well, Your Honor, our allegations remained the same throughout, that there was... Yes, but don't you agree that your earlier complaints expressly called this an exclusive dealing concern under both the Clayton Act and the Sherman Act? Yes, Your Honor, that's correct, because there was an element of exclusivity to it. But what I would say is even if you, even if in this case, we were bound by that, if we could not argue that this is a broader agreement... I'm not suggesting you're bound by that, but clearly your arguments have evolved over time, at least the causes of action that you would like interpreted. And so what I'm trying to understand is how did this district court judge miss the ball in terms of the refusal to deal? What in your complaint, your third amended complaint, should have made it really clear to him that this is no longer an exclusive dealing concern? It's a refusal to deal. And so are there any other... Your time is probably winding down. And are there any other particular paragraphs in this complaint that you think I really need to focus on, as should have evidence to the district court, this is a refusal to deal complaint? Yes, if you look at paragraphs 104 through 107, the only change that occurred was the ceasing of doing business. They were doing business. There are allegations that start back in 100, all the way through, where the course of dealing that existed was that, and I'm talking now about the NUPIC market, but it's also the same in the other market, that OSI was hoarding power analytics. They were making sure that the software worked with their historian product, which was the critical bridge. They talked about going and visiting NUPIC customers together. And then what happened was after this arrangement occurred, then they refused to do that. They refused to participate them. They refused to take them to customers, refused to even answer their calls. Counsel, counsel, counsel, I don't have a red light in front of me, but I'm confident your time has expired. So we'll continue and the case is submitted. Thank you very much. The Honorable Court is adjourned until tomorrow morning at 10 a.m.